# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **CAROLINE RAVYNN BLEDSOE** | ) | |
| | ) | **Case No. 3:25-cv-01033** |
| **v.** | ) | **Magistrate Judge Holmes** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |

## MEMORANDUM OPINION

Plaintiff Caroline Ravynn Bledsoe filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her child disability benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 10) and supporting memorandum (Docket No. 11), to which Defendant SSA responded (Docket No. 14) and Plaintiff replied (Docket No. 15). The parties consented to entry of final judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 10) is **GRANTED**.

## I.      INTRODUCTION

Plaintiff was born on July 24, 2004, so she attained the age of 18 in 2022. (Transcript of the Administrative Record (Docket No. 6) at 22).[1] On July 1, 2022, before she turned 18, an application for SSI was proactively filed on her behalf. (AR 17.) In her application, Plaintiff

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

asserted that, as of the alleged onset date of July 24, 2004, she was disabled and unable to work due to the following physical or mental conditions: personal history of extreme low birth weight, attention-deficit/hyperactivity disorder (ADHD), anxiety disorder, depressive disorder, autism spectrum disorder, Tourette syndrome, bipolar and schizophrenic disorder. (AR 262.)

Her claim was denied initially on December 20, 2022, and upon reconsideration on August 15, 2023. (AR 103–28.) Administrative Law Judge ("ALJ") Shannon Heath held hearings on March 26, 2024 and July 22, 2024. (AR 47–102.) Plaintiff appeared with counsel and testified at the latter hearing. On August 8, 2024, the ALJ denied Plaintiff's claim. (AR 17–41.) On July 30, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1–6.) Plaintiff then timely commenced this civil action pursuant to 42 U.S.C. § 405(g). (Docket No. 1.)

## II.     THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in the August 8, 2024 decision:

1.     The claimant was born on July 24, 2004 and was therefore an adolescent on July 1, 2022, her application date (20 CFR 416.926a(g)(2)(v)). The claimant attained age 18 on July 23, 2022 (20 CFR 404.1563).

2.     The claimant did not engage in substantial gainful activity between her application date of July 1 and July 23, 2022, the date she attained age 18 (20 CFR 404 .1520 (b) and 416.971 *et seq*.).

3.     Prior to attaining age 18, the claimant had the following severe impairments: attention-deficit hyperactivity, auditory hallucinations, unspecified anxiety and depression disorders (20 CFR 416.924(c)).

4.     Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in sections 112.03, 112.04, 12.06 or 112.11 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.     Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (20 CFR 16.924(d) and 416.926a).

2

6.	The claimant has not engaged in substantial gainful activity since she attained age 18 on July 23, 2022 (20 CFR 404.1520(b)).

7.	Since attaining age 18, the claimant has had the following severe impairments: attention-deficit hyperactivity, anxiety, depressive type schizoaffective and disassociate identity disorders (20 CFR 404.15 (c)).

8.	Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in section 12.00 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520 (d), 404.1525 and 404.1526).

9.	After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: She can understand, remember and carry out simple tasks. She can maintain concentration, persistence and pace for those tasks in two-hour intervals with customary breaks. She can occasionally interact with supervisors and coworkers. She cannot interact with the general public. She can adapt to occasional workplace changes.

10.	The claimant has no past relevant work (20 CFR 404.1520 (f)).

11.	The claimant was born on July 24, 2004 and attained age 18 on July 23, 2022. She has been a younger individual age 18-49 since then (20 CFR 404 .1563).

12.	The claimant has a limited education (20 CFR 404.1564).

13.	Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

14.	Since the date the claimant attained age 18, considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 404.1560 (c) and 404.1566).

15.	The claimant has not been under a disability, as defined in the Social Security Act, from July 23, 2022 through the date of this decision (20 CFR 404.350(a)(5) and 404.1520(g)).

(AR 22–40.)

## III.	REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

3

**A.    Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her residual functional capacity ("RFC"),

which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B.    Plaintiff's Assertion of Error

Plaintiff asserts that the ALJ failed to adequately evaluate the medical opinion evidence of mental health provider Chelsi Williamson, L.M.S.W., and family medicine doctor Chris Ingraham, D.O., when assessing Plaintiff's RFC. (Docket No. 11 at 8–15.) Accordingly, Plaintiff asks the Court to vacate the ALJ's decision and remand the matter to the SSA for further administrative proceedings. (*Id.* at 15.)

Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). "In formulating a residual functional

5

capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

When evaluating medical opinion evidence to formulate the RFC, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include: (1) supportability, (2) consistency, (3) the provider's relationship with the claimant, (4) the provider's specialization, and (5) other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).

The first and second factors, supportability and consistency, are the "most important" in a "persuasiveness" analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two factors have been described as follows:

> In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. . . . Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to "other medical and nonmedical sources."

*Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio September 12, 2023) (citations omitted).

These two most important factors – supportability and consistency – must be explained, while the other three factors may be explained. 20 C.F.R. § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in her determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

### 1. <u>Chelsi Williamson, L.M.S.W.</u>

Ms. Williamson provided Plaintiff with twice weekly mental health treatment from September 2023 to February 2024 at Ellie Mental Health. (AR 537–735.) A few months later, on May 15, 2024, Ms. Williamson completed a "Mental Impairment Questionnaire" for Plaintiff. (AR

518–22.) She opined that Plaintiff's mental functioning was limited because she had "extensive difficulty maintaining attention and focus required to maintain . . . or complete a task" and experienced "rapid emotional cycling when stressed." (AR 518.) Ms. Williamson referred to several clinical findings to demonstrate the severity of Plaintiff's mental impairment and symptoms, including particular tests that Plaintiff took and Plaintiff's twice weekly mental status examinations. (AR 518.) Accordingly, Ms. Williamson found that Plaintiff had marked or extreme limitations in the following areas:

- Marked (the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited)
  - Understanding information
  - Interacting with others
  - Concentrating
  - Maintaining pace

- Extreme (not able to function independently, appropriately, effectively, and on a sustained basis, but it does not mean a total loss of ability to function)
  - Remembering information
  - Applying information
  - Persisting
  - Adapting in the workplace
  - Managing oneself in the workplace

(AR 521.) Ms. Williamson concluded that Plaintiff was not capable of performing a full-time job on a regular and continuing basis. (AR 522.)

The ALJ found that Ms. Williamon's opinion was "not persuasive." (AR 38–39.) In particular, the ALJ was not persuaded by Ms. Williamson's finding that Plaintiff was markedly or extremely limited in the four domains of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing herself. (AR 38–39.) The ALJ stated:

> [Ms. Williamson's opinion] is not supported by and is inconsistent with her own objective medical findings and the overall weight of the evidence in the record as a

whole, and because it is not expressed in appropriate vocational terms for assessing mental limitations.

(AR 39.)

In Plaintiff's motion, she argues that the ALJ failed to adequately explain the supportability and consistency of Ms. Williamson's opinion as required under the applicable regulations. (Docket No. 11 at 8–13.) With respect to supportability, Plaintiff argues that Ms. Williamson's findings were, indeed, supported by objective medical findings and the ALJ's rejection of those findings was not adequately justified. Plaintiff also argues that Ms. Williamson used appropriate vocational terms to express Plaintiff's mental limitations. With respect to consistency, Plaintiff argues that the ALJ should have noted the consistency between the findings made by Ms. Williamson and other medical providers, including the consultative psychological examiner and Plaintiff's family medicine provider. Instead, the ALJ offered an "uninformative conclusory assertion" that the opinion was inconsistent with the evidence in the record as a whole. (*Id.* at 12.)

In its response, the SSA argues that the ALJ's analysis at different points in the decision was adequate to explain why the ALJ found Ms. Williamson's opinion to not be persuasive. (Docket No. 14 at 7.) The SSA points to the ALJ's discussion of Ms. Williamson's treatment notes that Plaintiff "appeared alert, oriented, and cooperative with appropriate grooming, good eye contact, normal psychomotor activity, normal speech, logical thought process, intact memory, and intact attention span," as well as other providers' treatment notes that Plaintiff "appeared alert, oriented, cooperative, and pleasant with good eye contact, normal speech, clear and logical thought process, and intact memory." (*Id.* (citing AR 35–37.)

As set forth above, the ALJ states that Ms. Williamson's opinion is not supported by or consistent with her "objective medical findings" or the "overall weight of the evidence in the record." (AR 39.) With respect to consistency, the ALJ found that "the overall weight of the

evidence in the record as a whole" rendered Ms. Williamson's opinion not persuasive. This "evidence" included Plaintiff's visits with primary care and mental health care providers, psychological evaluations, and notes from counseling and therapy sessions, which the ALJ stated "simply does not document the severe and disabling ongoing subjective symptoms the claimant alleges she has suffered from because of her mental problems since she attained age 18. Instead, it indicates they are controlled to a great extent by her treatment plans for the same without adverse medicinal side effects as long as her medications are optimized, she takes them as directed and follows them as instructed." (AR 37.)  It is clear that the ALJ found that other evidence in the record contracted, or at least weakened, Ms. Williamson's opinion that Plaintiff was not capable of performing a full-time job on a regular and continuing basis due to her marked or extreme limitations.

Although Plaintiff points to other medical records that she believes are consistent with Ms. Williamson's opinion and support a more restrictive RFC, it is not this Court's job to determine if there is evidence in favor of Plaintiff's position that she is not able to perform a full range of work with certain non-exertional limitations. *See Garner*, 745 F.2d at 387 ("This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."). This Court is limited to determining whether substantial evidence supported the ALJ's RFC. That substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406. Accordingly, the Court finds that the ALJ provided a sufficient explanation of the consistency of Ms. Williamson's opinion.

With respect to supportability, although the ALJ may not be required to reiterate all of the medical findings that Ms. Williamson made that are not supported by her opinion, the ALJ failed

10

to provide the Court with enough information to permit a meaningful review. The ALJ failed to explain, even in simple terms, *how* Ms. Williamson's opinion is not supportable or consistent. In the decision, the ALJ discussed Ms. Williamson's initial appointment with Plaintiff on September 25, 2023 as follows:

> The claimant's mental examination was normal except for her alternating euthymic/sad mood, flat, angry and embarrassed affect, and some unspecified thought fluidity issues. The claimant was diagnosed with a depressive type schizoaffective disorder and self-diagnosed dissociative identity one, she was advised to undergo appropriate counseling, cognitive/psychodynamic behavioral and social skill therapy for the same, and return a few days later for her next appointment.

(AR 36.) The ALJ then noted that Plaintiff underwent periodic counseling and therapy with Ms. Williamson and generally improved. (AR 36–37.) However, the ALJ did not discuss any other treatment notes from Ms. Williamson in any detail, including those wherein Ms. Williamson remarked that Plaintiff's condition was either "unchanged" or "minimally improved" from the initiation of treatment. (AR 550, 557, 581, 617, 641, 712, 724, 731.) Although it may be true that an ALJ's discussion of medical evidence at other points in a decision may allow the Court to engage in meaningful review, here, the ALJ makes no explanation of how Ms. Williamson's opinion is inconsistent with, and therefore not supported by, findings in the treatment notes that are discussed separately.

As it stands, the ALJ's discussion of Ms. Williamson's opinion leaves the Court to wonder how the ALJ reached her conclusion that the opinion was not persuasive, at least with respect to the factor of supportability. Accordingly, the Court cannot find that the ALJ appropriately weighed Ms. Williamson's opinion because the ALJ failed to consider the supportability factor as required under the regulations. This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Hardy*, 554 F. Supp. 3d at 906;

*Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021WL 2535580, at *7–8 (N.D. Ohio June 3, 2021) (finding that the "ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Sprout's opinion was substantially inconsistent with the medical record"). For these reasons, remand is required.

### 2.    Chris Ingraham, D.O.

Dr. Ingraham provided Plaintiff with regular care for a few months from November 2017 to February 2018, and then provided her with intermittent care in July 2018, January 2022, July 2023, and November 2023. (AR 370–91, 523–32.) Six months after last seeing Plaintiff, Dr. Ingraham completed a "Mental Impairment Questionnaire" for Plaintiff. (AR 761–65.) He opined that Plaintiff was not able to perform a full-time job and would be absent from work for more than four days per month. (AR 765.) He also found that she had no useful ability to function in several mental areas, including remembering work-like procedures, carrying out simple instructions, sustaining an ordinary routine without supervision, and setting realistic goals, among others. (AR 763.) He explained that, due to her multiple mental disorders, including dissociative identify disorder, Plaintiff is "unable to perform any meaningful work." (AR 763.) He stated that Plaintiff's obesity and polycystic ovary syndrome (PCOS) limited "all aspects of function" (AR 764.)

The ALJ found that Dr. Ingraham's opinion was "not persuasive." (AR 39.) The ALJ stated:

> [Dr. Ingraham's opinion] is not persuasive since he only saw her twice during the period in question, it is outside the area of his expertise, and because it is not supported by and is inconsistent with his own objective medical findings and the overall weight of the evidence in the record as a whole and not expressed in appropriate vocational terms for assessing mental limitations

(AR 39.) At other points in the decision, the ALJ detailed three of Plaintiff's visits with Dr. Ingraham. The first took place on January 10, 2022, or about six months before Plaintiff turned

eighteen. According to the ALJ, based on reports that Plaintiff was hearing voices, socially anxious, and depressed, Dr. Ingraham diagnosed Plaintiff with ADHD, auditory hallucinations, and adolescent anxiety disorders; prescribed medication for her ADHD; and referred her to a local mental health care provider. (AR 24.) The next visit took place about one and a half years later right before Plaintiff turned eighteen. Plaintiff reported serious ADHD, schizophrenia, anxiety, depression, and dissociative identity disorder problems, but was noted to be alert and fully oriented. According to the ALJ, Dr. Ingraham diagnosed Plaintiff with ADHD; prescribed medication for her ADHD; referred her to a local mental health care provider; and advised her to return for another appointment. (AR 36.) The ALJ wrote that Plaintiff "was not diagnosed with a dissociative identity disorder since it was thought her self-reported symptoms could have been caused by her extreme isolation and preoccupation with fantasy video games and finding group resources online." (AR 36.) The third visit took place on November 13, 2023 when Plaintiff was nineteen. Plaintiff reported taking ADHD medication without issue, and was noted to be alert and in no acute distress. According to the ALJ, Dr. Ingraham once again diagnosed Plaintiff with ADHD; prescribed medication for her ADHD; and advised her to return for another appointment. (AR 36.)

In Plaintiff's motion, she argues that the ALJ failed to adequately explain the supportability and consistency of Dr. Ingraham's opinion as required under the applicable regulations. (Docket No. 11 at 13–15.) Plaintiff asserts that the ALJ "improperly second-guesses a source who has followed Plaintiff for many years" and accuses the ALJ of "playing doctor." (*Id.* at 13–14.)

In its response, the SSA argues that the ALJ sufficiently analyzed Dr. Ingraham's opinion. It contends that treatment notes show that Plaintiff "appeared alert, oriented, and cooperative with

13

appropriate grooming, good eye contact, normal psychomotor activity, normal speech, logical thought process, intact memory, and intact attention span." (Docket No. 14 at 8.)

The Court finds that the ALJ's analysis of Dr. Ingraham's opinion is sufficient. With respect to consistency, the ALJ found that "the overall weight of the evidence in the record as a whole" rendered Dr. Ingraham's opinion not persuasive. As detailed above, the ALJ set forth the evidence in the record and concluded that it did not "document" the symptoms that Plaintiff alleged. (AR 37.) For the same reasons set forth above with respect to Ms. Williamson's opinion, the Court finds that the ALJ's consideration of the consistency of Dr. Ingraham's opinion was consistent.

With respect to supportability, it is clear to the Court why the ALJ found that Dr. Ingraham's opinion was less supportable. The ALJ clearly stated that Dr. Ingraham's opinion was not persuasive because of the limited number of times that he examined Plaintiff and because the findings in his opinion were not within the scope of his expertise. This explanation provides the Court with insight into why the ALJ felt that Dr. Ingraham did not have sufficient justification for his conclusions. Although the ALJ did not refer to specific findings from Dr. Ingraham when discussing the persuasiveness of his opinion,[2] the explanation that the ALJ otherwise offers provides adequate information to allow the Court to engage in a meaningful review of the ALJ's supportability decision. This contrasts with the ALJ's discussion of Ms. Williamson's opinion, which was inadequate because it provided the Court with no "logical bridge" between the evidence and the ALJ's conclusion. *See Todd*, 2021WL 2535580, at *7–8.

---

[2] As detailed above, the ALJ discussed Dr. Ingraham's treatment of Plaintiff at other points in his decision. (AR 24, 36.)

# V. CONCLUSION

For the above stated reasons Plaintiff's motion for judgment on the administrative record (Docket No. 10) is **GRANTED** and this matter is **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this memorandum opinion.

An appropriate Order will accompany this memorandum opinion.

It is SO ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge

15